IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

MINERVA INDUSTRIES, INC.,

PLAINTIFF,

v.

RESEARCH IN MOTION CORPORATION;
CRICKET COMMUNICATIONS, INC.,

DEFENDANTS.

CIVIL ACTION NO. 2-08-cv-00020-TJW

JURY TRIAL DEMANDED

**DEFENDANT RESEARCH IN MOTION CORPORATION'S
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Research In Motion Corporation ("RIM") files the following answer, affirmative defenses, and counterclaims in response to Plaintiff Minerva Industries, Inc.'s ("Minerva's") Complaint and Demand for Jury Trial.

**Answers to Minerva's Allegations of Patent Infringement**

RIM answers the allegations in the separately numbered paragraphs of Minerva's Complaint as follows:

1.      RIM is without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 1 and therefore denies same.

2.      RIM admits that it is a Delaware corporation, and that it has a place of business at 122 West John Carpenter Parkway, Suite 430, Irving, Texas 75039.  All other allegations in this paragraph, either express or implied, are denied.

3.      RIM is without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 3 and therefore denies same.

DM_US:21066315_1

4.      RIM admits the allegations in Paragraph 4.

5.      To the extent that the allegations of Paragraph 5 are made against RIM, RIM admits that venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) on the basis that RIM has transacted business in this district.  All other allegations in this paragraph relating to RIM, either express or implied, are denied.  With regard to the allegations of this paragraph relating to Defendant Cricket Communications, Inc. ("Cricket"), RIM is without sufficient information to form a belief as to the truth or falsity of those allegations, and therefore denies same.

6.      To the extent that the allegations of Paragraph 6 are made against RIM, RIM admits that it is subject to this Court's specific and general personal jurisdiction due to the fact that RIM regularly does business in Texas and in this Judicial District. All other allegations in this paragraph relating to RIM, either express or implied, are denied.  With regard to the allegations of this paragraph relating to Cricket, RIM is without sufficient information to form a belief as to the truth or falsity of those allegations, and therefore denies same.

7.      RIM is without information sufficient to admit or deny that Minerva is the current owner of United States Patent No. 7,321,783 ("the '783 patent") and therefore denies same. RIM otherwise admits the allegations in Paragraph 7.

8.      RIM admits the allegations in Paragraph 8.

9.      RIM admits that U.S. Patent Application No. 10/719,363 is a continuation application of the application that issued as U.S. Patent No. 6,681,120 ("the '120 patent").  RIM also admits that the '120 patent issued on January 20, 2004 and is entitled "Mobile Entertainment and Communication Device."  RIM further admits that Ki Il Kim is listed as the inventor of the '120 patent.  RIM is without information sufficient to admit or deny whether Minerva is the

current owner by assignment of the '120 patent and therefore denies same.  RIM admits that Minerva earlier filed litigation asserting infringement of the '120 patent in this judicial district, and that Civil Action No: 2-07 CV-229 is currently pending before The Honorable T. John Ward.  RIM denies that Civil Action No: 2-07 CV-230 is currently pending before the Honorable David Folsom.  RIM is without information sufficient to admit or deny whether Minerva intends to seek to consolidate this action with the already pending '120 patent infringement actions and therefore denies same.  All other allegations in this paragraph, either express or implied, are denied.

10.     RIM denies the allegations in Paragraph 10.

11.     RIM is without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 11 and therefore denies same.

12.     With regard to the allegations in Paragraph 12 against RIM, RIM denies the allegations in Paragraph 12.  RIM is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 12 and therefore denies same.

13.     With regard to the allegations in Paragraph 13 against RIM, RIM denies the allegations in Paragraph 13.  RIM is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 13 and therefore denies same.

14.     With regard to the allegations in Paragraph 14 against RIM, RIM denies the allegations in Paragraph 14.  RIM is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 14 and therefore denies same.

15.     With regard to the allegations in Paragraph 15 against RIM, RIM denies the allegations in Paragraph 15.  RIM is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 15 and therefore denies same.

DM_US:21066315_1

**<u>Response to Minerva's Prayer For Relief</u>**

The allegations in the paragraph requesting relief are in the nature of prayer.  Although no answer is required, RIM responds to the individual requests for relief as follows:

1.     With respect to Minerva's allegations against RIM, RIM denies that Minerva is entitled to the requested judgment, and denies any and all liability for Minerva's claims.  With respect to Minerva's allegations against Cricket, RIM is without information sufficient to form a response and therefore denies that Minerva is entitled to the requested relief.

2.     With respect to Minerva's allegations against RIM, RIM denies that Minerva is entitled to the requested permanent injunction, and denies any and all liability for Minerva's claims.  With respect to Minerva's allegations against Cricket, RIM is without information sufficient to form a response and therefore denies that Minerva is entitled to the requested relief.

3.     With respect to Minerva's allegations against RIM, RIM denies that Minerva is entitled to the requested damages, costs, expenses, and prejudgment and post-judgment interest, and denies any and all liability for Minerva's claims.  With respect to Minerva's allegations against Cricket, RIM is without information sufficient to form a response and therefore denies that Minerva is entitled to the requested relief.

4.     With respect to Minerva's allegations against RIM, RIM denies that Minerva is entitled to the requested enhanced damages as permitted under 35 U.S.C. § 284, and denies any and all liability for Minerva's claims.  With respect to Minerva's allegations against Cricket, RIM is without information sufficient to form a response and therefore denies that Minerva is entitled to the requested relief.

5.     With respect to Minerva's allegations against RIM, RIM denies that Minerva is entitled to the requested judgment and order finding that this is an exceptional case such that

Minerva is entitled to its attorneys' fees, and denies any and all liability for Minerva's claims. With respect to Minerva's allegations against Cricket, RIM is without information sufficient to form a response and therefore denies that Minerva is entitled to the requested relief.

6.      With respect to Minerva's allegations against RIM, RIM denies any and all liability for the alleged conduct, denies that any relief sought by Minerva is warranted, and requests that Minerva's requested relief be denied.  With respect to Minerva's allegations against Cricket, RIM is without information sufficient to form a response and therefore denies that Minerva is entitled to any relief on its claims.

### Defenses and Affirmative Defenses

### Non-Infringement

1.      RIM has not infringed and does not infringe any of the claims of U.S. Patent No. 7,321,783 ("the '783 patent") literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner.

### Patent Invalidity

2.      The claims of the '783 patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C., including specifically §§ 102, 103, 112, and/or 185, and the rules, regulations, and laws pertaining thereto.

### Inequitable Conduct

3.      Minerva's allegations of infringement of the '783 patent are barred because the '783 patent is unenforceable pursuant to equity and the doctrine of inequitable conduct.

4.      As noted on the face of the '783 patent, the patent application that would eventually issue as the '783 patent was filed as a continuation to U.S. Patent Application Serial

No. 09/531,356 (now U.S. Patent No. 6,681,120), which was filed as a continuation-in-part to U.S. Patent Application Serial No. 08/846,108 (now U.S. Patent No. 6,278,884).

5.       On April 25, 1997, Ki Il Kim, a United States citizen residing in Los Angeles, California and identified on the face of the '783 patent as the inventor thereof, filed U.S. Patent Application Serial No. 08/846,108 ("the '108 application") with the U.S. Patent and Trademark Office ("PTO").

6.       Prior to filing the '108 application, however, Ki Il Kim previously filed two patent applications in the Republic of Korea on March 7, 1997 and March 26, 1997, respectively, which, as subsequently admitted by Ki Il Kim, contained material equivalent to that disclosed and claimed in the '108 application.  Such foreign filings prior to the filing of the '108 application constituted a violation of 35 U.S.C. § 184.

7.       According to 35 U.S.C. § 184, and as further delineated in 37 C.F.R. § 5.11, "[a] license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for patent … in a foreign patent office or any foreign patent agency … if the invention was made in the United States and … [n]o application on the invention has been filed in the United States." *See* 37 C.F.R. § 5.11(a).

8.       Moreover, pursuant to 35 U.S.C. § 185, "any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person … shall, without procuring the license prescribed in section 184 of this title, have made … application in a foreign country for a patent … in respect of the invention.  A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid, unless the failure to procure such license was through error and without deceptive intent …."

9.      As Ki Il Kim had filed two patent applications in the Republic of Korea prior to filing the '108 application, Ki Il Kim filed with the PTO a "Petition Under 37 C.F.R. 5.25 For Retroactive License" and supporting "verified declaration" concurrently with the filing of the '108 application.

10.     According to 37 C.F.R. § 5.25, "[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified statement (oath or declaration) containing: (i) An averment that the subject matter in question was not under a secrecy order at the time it was filed ab[road], and that it is not currently under a secrecy order, (ii) A showing that the license has been diligently sought after discovery of the proscribed foreign filing, and (iii) An explanation of why the material was filed abroad through error and without deceptive intent without the required license … first having been obtained." *See* 37 C.F.R. § 5.25.

11.     In the "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

> "3.     That I filed patent applications in the Republic of Korea on March 7 and March 26, 1997 containing material equivalent to that in th[is] United States patent application …"
>
> ***
>
> "5.     That I have diligently sought to obtain this license after I was informed by my attorney, Irving Keschner, that such a license was required;
>
> 6.     That I received such information when I sought Mr. Keschner's assistance in preparing the corresponding United States patent application on or about April 23, 1997;
>
> 7.     That I personally had traveled to Korea on or about March   , 1997 [sic] to, inter alia, file the patent applications in the Korean patent office; that at the time of my travel to Korea I was unaware of the prohibitions of 35 U.S.C. 184;
>
> 8.     That since Mr. Keschner first informed me of the requirement that a petition for a retroactive license must be filed, I have authorized him to take the

necessary steps to prepare the petition and submit it concurrently with the filing of the United States patent application."

12.     Ki Il Kim concluded his "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," by stating that that "these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

13.     Subsequently, on March 20, 2000, while the '108 application was still pending with the PTO, Ki Il Kim filed U.S. Patent Application Serial No. 09/531,356 ("the '356 application").   As noted above, the '356 application was filed as a continuation-in-part application to the '108 application.   The '356 application would eventually issue as U.S. Patent No. 6,681,120 ("the '120 patent").

14.     Prior to filing the '356 application, however, Ki Il Kim once again filed two patent applications in the Republic of Korea on October 15, 1999 and December 17, 1999, respectively, which, as subsequently admitted by Ki Il Kim, contained material equivalent to that disclosed and claimed in the '356 application.   As with foreign applications filed prior to the '108 application, the present foreign applications filed prior to the filing of the '356 application constituted a violation of 35 U.S.C. § 184.

15.     As during the prosecution of the '108 application, Ki Il Kim again filed a "Petition Under 37 C.F.R. 5.25 For Retroactive License" and supporting "verified declaration" concurrently with the filing of the '356 application.

16.     In the "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

"3.     That I filed patent applications in the Republic of Korea on October 15, 1999 … and on December 17, 1999 … containing material equivalent to material that is disclosed in this United States patent application;"

\*\*\*

"5.     That I have diligently sought to obtain this license after being informed that such a license was required in connection with this U.S. patent application; and

6.     That I periodically travel to Korea and communicate by telephone from the United States to Korea in connection with my business of designing and developing consumer products that can be manufactured in Korea for sale in the United States and elsewhere and, in that connection in the Fall of 1999 I had telephone conversations with Mr. Cho of Now Precision Company concerning development of the product that is the subject matter of this U.S. patent application and that I became concerned that my proprietary information concerning the subject matter of this U.S. patent application might be revealed to others who, with or without Mr. Cho, might file one or more patent applications in Korea claiming the subject matter of this U.S. patent application as being their invention.  Since Korea awards patents in the case of a conflict between separate applications to the application that was filed first, I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the United States might be jeopardized by such filings."

17.     As before, Ki Il Kim concluded his "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," by stating that "these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

18.     Subsequently, on January 20, 2004, the '356 application issued as the '120 patent.

19.     As outlined above, Ki Il Kim's "verified declaration" submitted to the PTO during the prosecution of the '356 application stating that "I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the

United States might be jeopardized by such filings," constituted an affirmative misrepresentation to the PTO.

20.     Ki Il Kim was admittedly informed just three years earlier during the prosecution of the '108 application "of the prohibitions of 35 U.S.C. 184."  As such, based on information and belief, Ki Il Kim was aware that "[a] license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for patent … in a foreign patent office or any foreign patent agency … if the invention was made in the United States and … [n]o application on the invention has been filed in the United States." *See* 37 C.F.R. § 5.11(a).

21.     Ki Il Kim's affirmative misrepresentation was of a material fact, as "any person, … shall not receive a United States patent for an invention if that person … shall, without procuring the license prescribed in section 184 of this title, have made … application in a foreign country for a patent … in respect of the invention.  A United States patent issued to such person … shall be invalid …."  *See* 35 U.S.C. § 185(a).  As such, Ki Il Kim's affirmative misrepresentation was directly related to the patentability of the '356 application (and ultimately, the '120 patent).

22.     Moreover, Ki Il Kim's affirmative misrepresentation of a material fact was made with an intent to deceive the PTO.  Ki Il Kim (and/or his attorney) was aware that "[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified statement (oath or declaration) containing: … [a]n explanation of why the material was filed abroad through error and without deceptive intent without the required license … first having been obtained." *See* 37 C.F.R. § 5.25.  Pursuant to 35 U.S.C. § 185, without such an "explanation of … error," the '365 application would not issue as a United States patent.

DM_US:21066315_1

23.     Accordingly, Ki Il Kim's "verified declaration" stating that "I filed the two Korean patent applications … without knowing that my rights to a patent in the United States might be jeopardized by such filings," when Ki Il Kim was admittedly informed just three years earlier during the prosecution of the '108 application "of the prohibitions of 35 U.S.C. 184," and when Ki Il Kim was aware that the '365 patent application would not issue as a United States patent without an "explanation of … error," shows that Ki Il Kim intended to deceive the PTO into accepting his "Petition Under 37 C.F.R. 5.25 For Retroactive License," and thereafter allowing the '120 patent.

24.     Thus, Ki Il Kim, the named inventor of the '120 patent, made an affirmative misrepresentation of material fact with an intent to deceive the PTO during the prosecution of the application that would eventually issue as the '120 patent.  As such, Ki Il Kim committed inequitable, and the '120 patent is therefore unenforceable.

25.     Moreover, as noted at the outset, the application that eventually would issue as the '783 patent was filed as a continuation application to the '120 patent.  As such, the inventor of the '783 patent, Ki Il Kim, has effectively represented, and the PTO has accepted, that the '783 patent only discloses and claims subject matter that was previously disclosed in the '120 patent.

26.     Accordingly, the '783 patent and the '120 patent disclose the exact same subject matter.  Therefore, without conceding the validity of any claims, as the claims of the '783 patent issued from a continuation application to the '120 patent, by definition of a "continuation" application, each and every claim of the '783 patent could have been included as a claim in the previously-filed '120 patent.

27.     Furthermore, during the prosecution of the '783 patent, the PTO rejected all of the then-pending claims under the doctrine of "obviousness-type double patenting" in light of the

claims of the '120 patent.  As stated by the PTO examiner, "[a]lthough the conflicting claims are not identical, they are not patentably distinct from each other because the limitations of the claims of the ['783 patent] are broad enough to be encompassed by the claims of the ['120 patent]."

28.     In response to this rejection, the legal representative for Minerva filed a "Terminal Disclaimer," and stated that "Minerva … does hereby disclaim the terminal part of any patent granted on [the application that would eventually issue as the '783 patent] which would extend beyond the expiration date of [the '120 patent] and hereby agrees that any patent so granted on [the application that would eventually issue as the '783 patent] shall be enforceable only for and during such period that the legal title to said patent shall be the same as the legal title to [the '120 patent].

29.     Accordingly, Minerva has effectively conceded that the claims of the '783 patent and the claims of the '120 patent are not "patentably distinct" in scope.

30.     Therefore, as Ki Il Kim committed inequitable conduct with respect to the '120 patent, all claims of the '120 patent are affected by the inequitable conduct.  That unenforceability extends to the '783 patent and all claims therein because of the immediate and necessary relationship between the '120 patent and the '783 patent, as a continuation application thereof, and based upon the above-described terminal disclaimer.  More specifically, because the claims of the '783 patent could have been included as claims in the previously-filed '120 patent, Ki Il Kim's inequitable conduct in prosecuting the '120 patent has immediate and necessary relation to the enforcement of the '783 patent such that the inequitable conduct committed with respect to the '120 patent extends to the '783 patent.  Minerva cannot escape this

unenforceability by filing a continuation application for claims that otherwise could have been prosecuted in the unenforceable '120 patent.

31.     As such, equity requires that the '783 patent is unenforceable just as the '120 patent is unenforceable.

## Prosecution History Estoppel

32.     Because of proceedings in the PTO during the prosecution of the applications which resulted in the '783 patent, as shown by the prosecution history thereof, Minerva is estopped from asserting a construction of the '783 patent that would cause any valid claim thereof to cover or include any products that are or have been manufactured, used, sold or offered for sale by RIM, either literally or under the doctrine of equivalents.

## Bad Faith

33.     Minerva has brought this suit in bad faith making it an exceptional case, thereby entitling RIM to its costs and attorneys fees pursuant to 35 U.S.C. § 285.

## No Irreparable Harm

34.     Minerva is not entitled to injunctive relief against RIM because any alleged injury to Minerva would not be immediate or irreparable, and Minerva would have an adequate remedy at law.

WHEREFORE RIM prays that this Court dismiss Minerva's action against RIM and enter judgment that Minerva take nothing on its claims against RIM and award RIM its attorney's fees and costs of defending this action and such other and further relief as it may be entitled.

## COUNTERCLAIMS

### Parties

1.      Research In Motion Corporation ("RIM") is a corporation organized and existing under the laws of the State of Delaware with a place of business in Irving, Texas.

2.      Upon information and belief, Minerva Industries, Inc. ("Minerva") is a California corporation with its principal place of business at 255 S. Grand Avenue, Suite 2004, Los Angeles, California 90012.  As Minerva is the plaintiff in the above-captioned action, it may be served with a copy of this Counterclaim by serving this document in accordance with Rule 5 of the Federal Rules of Civil Procedure.

### Jurisdiction And Venue

3.      This Court has subject matter jurisdiction over RIM's counterclaims pursuant to 28 U.S.C. §§ 2201-2202, 1338 and 1331.  A real, immediate, and justiciable controversy exists between RIM and Minerva.  The controversy relates to the invalidity, non-infringement, and unenforceability of U.S. Patent No. 7,321,783 ("the '783 patent").  Minerva has accused RIM of infringing the '783 patent.

4.      As the plaintiff in the above-captioned lawsuit, Minerva has consented to jurisdiction and venue in this Court.

### Count 1:  Declaratory Judgment of Patent Invalidity

5.      RIM incorporates by reference each preceding allegation as though expressly stated herein.

6.      The claims in the '783 patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C.,

including specifically §§ 102, 103, 112, and/or 185, and the rules, regulations, and laws pertaining thereto.

7.      Accordingly, RIM seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that the '783 patent is invalid.

## Count 2:  Declaratory Judgment of Non-Infringement

8.      RIM incorporates by reference each preceding allegation as though expressly stated herein.

9.      RIM has not infringed and does not infringe any of the claims of the '783 patent literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner.

10.     Accordingly, RIM seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that it has not infringed (and does not infringe) any claim of the '783 patent.

## Count 3:  Declaratory Judgment of Unenforceability of Patent

11.     RIM incorporates by reference each preceding allegation as though expressly stated herein.

12.     Minerva's allegations of infringement of the '783 patent are barred because the '783 patent is unenforceable pursuant to equity and the doctrine of inequitable conduct.

13.     As noted on the face of the '783 patent, the patent application that would eventually issue as the '783 patent was filed as a continuation to U.S. Patent Application Serial No. 09/531,356 (now U.S. Patent No. 6,681,120), which was filed as a continuation-in-part to U.S. Patent Application Serial No. 08/846,108 (now U.S. Patent No. 6,278,884).

14.     On April 25, 1997, Ki Il Kim, a United States citizen residing in Los Angeles, California and identified on the face of the '783 patent as the inventor thereof, filed U.S. Patent

DM_US:21066315_1

Application Serial No. 08/846,108 ("the '108 application") with the U.S. Patent and Trademark Office ("PTO").

15.     Prior to filing the '108 application, however, Ki Il Kim previously filed two patent applications in the Republic of Korea on March 7, 1997 and March 26, 1997, respectively, which, as subsequently admitted by Ki Il Kim, contained material equivalent to that disclosed and claimed in the '108 application.   Such foreign filings prior to the filing of the '108 application constituted a violation of 35 U.S.C. § 184.

16.     According to 35 U.S.C. § 184, and as further delineated in 37 C.F.R. § 5.11, "[a] license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for patent … in a foreign patent office or any foreign patent agency … if the invention was made in the United States and … [n]o application on the invention has been filed in the United States." *See* 37 C.F.R. § 5.11(a).

17.     Moreover, pursuant to 35 U.S.C. § 185, "any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person … shall, without procuring the license prescribed in section 184 of this title, have made … application in a foreign country for a patent … in respect of the invention.  A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid, unless the failure to procure such license was through error and without deceptive intent …."

18.     As Ki Il Kim had filed two patent applications in the Republic of Korea prior to filing the '108 application, Ki Il Kim filed with the PTO a "Petition Under 37 C.F.R. 5.25 For Retroactive License" and supporting "verified declaration" concurrently with the filing of the '108 application.

19.      According to 37 C.F.R. § 5.25, "[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified statement (oath or declaration) containing: (i) An averment that the subject matter in question was not under a secrecy order at the time it was filed ab[road], and that it is not currently under a secrecy order, (ii) A showing that the license has been diligently sought after discovery of the proscribed foreign filing, and (iii) An explanation of why the material was filed abroad through error and without deceptive intent without the required license … first having been obtained." *See* 37 C.F.R. § 5.25.

20.      In the "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

> "3.      That I filed patent applications in the Republic of Korea on March 7 and March 26, 1997 containing material equivalent to that in th[is] United States patent application …"
>
> ***
>
> "5.      That I have diligently sought to obtain this license after I was informed by my attorney, Irving Keschner, that such a license was required;
>
> 6.      That I received such information when I sought Mr. Keschner's assistance in preparing the corresponding United States patent application on or about April 23, 1997;
>
> 7.      That I personally had traveled to Korea on or about March   , 1997 [sic] to, inter alia, file the patent applications in the Korean patent office; that at the time of my travel to Korea I was unaware of the prohibitions of 35 U.S.C. 184;
>
> 8.      That since Mr. Keschner first informed me of the requirement that a petition for a retroactive license must be filed, I have authorized him to take the necessary steps to prepare the petition and submit it concurrently with the filing of the United States patent application."

21.      Ki Il Kim concluded his "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," by stating that "these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or

imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

22.     Subsequently, on March 20, 2000, while the '108 application was still pending with the PTO, Ki Il Kim filed U.S. Patent Application Serial No. 09/531,356 ("the '356 application").   As noted above, the '356 application was filed as a continuation-in-part application to the '108 application.  The '356 application would eventually issue as U.S. Patent No. 6,681,120 ("the '120 patent").

23.     Prior to filing the '356 application, however, Ki Il Kim once again filed two patent applications in the Republic of Korea on October 15, 1999 and December 17, 1999, respectively, which, as subsequently admitted by Ki Il Kim, contained material equivalent to that disclosed and claimed in the '356 application.  As with foreign applications filed prior to the '108 application, the present foreign applications filed prior to the filing of the '356 application constituted a violation of 35 U.S.C. § 184.

24.     As during the prosecution of the '108 application, Ki Il Kim again filed a "Petition Under 37 C.F.R. 5.25 For Retroactive License" and supporting "verified declaration" concurrently with the filing of the '356 application.

25.     In the "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," Ki Il Kim declared, in relevant part, as follows:

> "3.     That I filed patent applications in the Republic of Korea on October 15, 1999 … and on December 17, 1999 … containing material equivalent to material that is disclosed in this United States patent application;"
>
> ***

"5.     That I have diligently sought to obtain this license after being informed that such a license was required in connection with this U.S. patent application; and

6.     That I periodically travel to Korea and communicate by telephone from the United States to Korea in connection with my business of designing and developing consumer products that can be manufactured in Korea for sale in the United States and elsewhere and, in that connection in the Fall of 1999 I had telephone conversations with Mr. Cho of Now Precision Company concerning development of the product that is the subject matter of this U.S. patent application and that I became concerned that my proprietary information concerning the subject matter of this U.S. patent application might be revealed to others who, with or without Mr. Cho, might file one or more patent applications in Korea claiming the subject matter of this U.S. patent application as being their invention.  Since Korea awards patents in the case of a conflict between separate applications to the application that was filed first, I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the United States might be jeopardized by such filings."

26.     As before, Ki Il Kim concluded his "verified declaration" filed in support of his "Petition Under 37 C.F.R. 5.25 For Retroactive License," by stating that that "these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

27.     Subsequently, on January 20, 2004, the '356 application issued as the '120 patent.

28.     As outlined above, Ki Il Kim's "verified declaration" submitted to the PTO during the prosecution of the '356 application stating that "I filed the two Korean patent applications to protect my rights in Korea without knowing that my rights to a patent in the United States might be jeopardized by such filings," constituted an affirmative misrepresentation to the PTO.

29.     Ki Il Kim was admittedly informed just three years earlier during the prosecution of the '108 application "of the prohibitions of 35 U.S.C. 184."  As such, based on information

and belief, Ki Il Kim was aware that "[a] license from the [PTO] under 35 U.S.C. § 184 is required before filing any application for patent … in a foreign patent office or any foreign patent agency … if the invention was made in the United States and … [n]o application on the invention has been filed in the United States." *See* 37 C.F.R. § 5.11(a).

30.      Ki Il Kim's affirmative misrepresentation was of a material fact, as "any person, … shall not receive a United States patent for an invention if that person … shall, without procuring the license prescribed in section 184 of this title, have made … application in a foreign country for a patent … in respect of the invention.  A United States patent issued to such person … shall be invalid …." *See* 35 U.S.C. § 185(a).  As such, Ki Il Kim's affirmative misrepresentation was directly related to the patentability of the '356 application (and ultimately, the '120 patent).

31.      Moreover, Ki Il Kim's affirmative misrepresentation of a material fact was made with an intent to deceive the PTO.  Ki Il Kim (and/or his attorney) was aware that "[a] petition for retroactive license under 35 U.S.C. § 184 … shall include … [a] verified statement (oath or declaration) containing: … [a]n explanation of why the material was filed abroad through error and without deceptive intent without the required license … first having been obtained." *See* 37 C.F.R. § 5.25.  Pursuant to 35 U.S.C. § 185, without such an "explanation of … error," the '365 application would not issue as a United States patent.

32.      Accordingly, Ki Il Kim's "verified declaration" stating that "I filed the two Korean patent applications … without knowing that my rights to a patent in the United States might be jeopardized by such filings," when Ki Il Kim was admittedly informed just three years earlier during the prosecution of the '108 application "of the prohibitions of 35 U.S.C. 184," and when Ki Il Kim was aware that the '365 patent application would not issue as a United States

patent without an "explanation of … error," shows that Ki Il Kim intended to deceive the PTO into accepting his "Petition Under 37 C.F.R. 5.25 For Retroactive License," and thereafter allowing the '120 patent.

33.    Thus, Ki Il Kim, the named inventor of the '120 patent, made an affirmative misrepresentation of material fact with an intent to deceive the PTO during the prosecution of the application that would eventually issue as the '120 patent.  As such, Ki Il Kim committed inequitable, and the '120 patent is therefore unenforceable.

34.    Moreover, as noted at the outset, the application that would eventually issue as the '783 patent was filed as a continuation application to the '120 patent.  As such, the inventor of the '783 patent, Ki Il Kim, has effectively represented, and the PTO has accepted, that the '783 patent only discloses and claims subject matter that was previously disclosed in the '120 patent.

35.    Accordingly, the '783 patent and the '120 patent disclose the exact same subject matter.  Therefore, without conceding the validity of any claims, as the claims of the '783 patent issued from a continuation application to the '120 patent, by definition of a "continuation" application, each and every claim of the '783 patent could have been included as a claim in the previously-filed '120 patent.

36.    Furthermore, during the prosecution of the '783 patent, the PTO rejected all of the then-pending claims under the doctrine of "obviousness-type double patenting" in light of the claims of the '120 patent.  As stated by the PTO examiner, "[a]lthough the conflicting claims are not identical, they are not patentably distinct from each other because the limitations of the claims of the ['783 patent] are broad enough to be encompassed by the claims of the ['120 patent]."

37.     In response to this rejection, the legal representative for Minerva filed a "Terminal Disclaimer," and stated that "Minerva … does hereby disclaim the terminal part of any patent granted on [the application that would eventually issue as the '783 patent] which would extend beyond the expiration date of [the '120 patent] and hereby agrees that any patent so granted on [the application that would eventually issue as the '783 patent] shall be enforceable only for and during such period that the legal title to said patent shall be the same as the legal title to [the '120 patent].

38.     Accordingly, Minerva has effectively conceded that the claims of the '783 patent and the claims of the '120 patent are not "patentably distinct" in scope.

39.     Therefore, as Ki Il Kim committed inequitable conduct with respect to the '120 patent, all claims of the '120 patent are affected by the inequitable conduct.  That unenforceability extends to the '783 patent and all claims therein because of the immediate and necessary relationship between the '120 patent and the '783 patent, as a continuation application thereof, and based upon the above-described terminal disclaimer.  More specifically, because the claims of the '783 patent could have been included as claims in the previously-filed '120 patent, Ki Il Kim's inequitable conduct in prosecuting the '120 patent has immediate and necessary relation to the enforcement of the '783 patent such that the inequitable conduct committed with respect to the '120 patent extends to the '783 patent.  Minerva cannot escape this unenforceability by filing a continuation application for claims that otherwise could have been prosecuted in the unenforceable '120 patent.

40.     As such, equity requires that the '783 patent is unenforceable just as the '120 patent is unenforceable.

41.     RIM accordingly seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that the '783 patent is unenforceable.

### Count 4:  Attorneys Fees and Costs

42.     RIM incorporates by reference each preceding allegation as though expressly stated herein.

43.     RIM is entitled to a declaration that this is an "exceptional" case within the meaning of 35 U.S.C. § 285, entitling RIM to an award of its reasonable and necessary attorneys' fees, expenses, and costs incurred in this action.

### JURY DEMAND

44.     RIM demands trial by a jury.

### PRAYER FOR RELIEF

WHEREFORE, Defendant/Counter-Plaintiff Research In Motion Corporation prays for the following relief:

(a)     a declaration and judgment that U.S. Patent No. 7,321,783 is invalid;

(b)     a declaration and judgment that U.S. Patent No. 7,321,783 is not infringed by Research In Motion Corporation;

(c)     a declaration and judgment that U.S. Patent No. 7,321,783 is unenforceable;

(d)     a declaration and judgment that this case is exceptional within the meaning of 35 U.S.C. § 285;

(e)     an award of reasonable attorneys' fees and costs incurred by Research In Motion Corporation in this action; and

(f)     such other and further relief as this Court deems just and proper.

Dated:  March 14, 2008.

Respectfully submitted,


By:  /s/ Peter J. Chassman
      Peter J. Chassman, **Attorney In Charge**
      Texas Bar No. 00787233
      Email:  chassmanp@howrey.com
      Tyler T. VanHoutan
      Texas Bar No. 24033290
      Email: vanhoutant@howrey.com
      HOWREY LLP
      1111 Louisiana, 25th Floor
      Houston, Texas 77002
      Telephone:   (713) 787-1400
      Facsimile:    (713) 787-1440


      COUNSEL FOR DEFENDANT,
      RESEARCH IN MOTION CORPORATION

OF COUNSEL:

Harry L. Gillam, Jr.
Texas Bar No. 07921800
Email:  gil@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 S. Washington Ave.
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

DM_US:21066315_1

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 14th day of March, 2008, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

    /s/ Peter J. Chassman